UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARETHA RAQUEL GUIDRY-DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV. ACT. NO. 1:22-cv-343-TFM-N** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Now pending before the Court are three motions filed by State Farm: (1) *Motion to Exclude Expert Testimony of Eduard Badiu, PhD, P.E.* (Doc. 36, filed 07/21/23), (2) *Motion to Exclude Expert Testimony of Dennis James* (Doc. 37, filed 07/21/23), and (3) *State Farm Fire and Casualty Company's Motion for Summary Judgment* (Doc. 38, filed 07/21/23). Having considered the motions, memoranda, supporting briefs, responses, replies, and relevant law, the motions to exclude (Docs. 36, 37) are **DENIED** and the motion for summary judgment (Doc. 38) is **GRANTED in part** and **DENIED in part** as discussed below.

## I.    JURISDICTION AND VENUE

No party contests jurisdiction or venue, and the Court finds adequate support for both. The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity).  The Court has personal jurisdiction over the claims in this action because the events that gave rise to this action occurred within this district.  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint . . . . General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated

to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction and require a showing of continuous and systematic general business contacts between the defendant and the forum state."). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims in this matter occurred in this judicial district.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

As it must, the Court takes the facts in the light most favorable to Plaintiff Aretha Guidry-Davis ("Guidry-Davis" or "Plaintiff"). Guidry-Davis is the owner of a residential home located on Wynnfield Drive West ("the Property") in Mobile, Alabama. Doc. 1-2 at ¶ 1. On September 16, 2020, the Property sustained damage as a result of Hurricane Sally ("the Loss"). *Id.* at 6; Doc. 39 at 2.

At the time of the Loss, the Property was insured under a homeowner's policy issued by Defendant State Farm Fire and Casualty Company ("State Farm" or "Defendant"), Policy No. 01-B2-N846-5, which covered the period 1/11/2021 to 1/11/2022 (the "Policy"). *See* Doc. 39-1 (State Farm Certified Policy Record). The Policy insured Plaintiff's dwelling located at the Property, its exterior and interior fixtures, Plaintiff's personal property, loss of use, and other applicable coverage. *Id.*; Doc. 1-2 at ¶ 5. The Policy contains a hurricane deductible of 2%, or $9,094.00 (Doc. 39-1 at 5), and pays the Actual Cash Value (ACV)[1] of the damages and the Replacement Cost Value (RCV) upon completion of the repairs. Doc. 39-1 at 9.

Plaintiff filed a claim, No. 0-1-11P1-04,[2] with State Farm after the Loss on September 18,

---

[1] The Policy defines ACV as the repair cost less pre-loss depreciation (Doc. 39-1 at 17).
[2] State Farm incorrectly references the Claim No. 1-11P1-04F, when discussing Plaintiff's Certified Insurance Policy and the related documents which all reference Policy No. 01-B2-N846-

2020.  Doc. 1-2 at  ¶ 7; Doc. 39 at 3. According to State Farm, in the initial claim call Plaintiff reported wind damage to the roof and fence, along with water spots on the ceilings and tree debris damage. Doc. 39-2 at 16-17. During the call, State Farm also noted that Plaintiff was informed of her duty to mitigate damages and the policy allowance for reasonable costs incurred to mitigate damages along with the claims adjuster encouraging Plaintiff to document the loss with photos and to retain all receipts for reimbursement purposes. *Id.*

On September 29, 2020, State Farm scheduled an inspection of the Property and explained the hurricane deductible to Plaintiff's husband, Kevin Davis.[3] Doc 39-1 at 4. Levi Thibault ("Thibault"), a State Farm claims handler certified in inspecting steep roofs, inspected the property on October 13, 2020, and prepared a claim note of his observations and conclusions regarding damage to the Property. Doc. 39-2 at 13. *Id.*  On the interior, Thibault noted light water staining to the ceilings in the kitchen and downstairs hall bathroom. Doc. 39 at 4. On the exterior, Thibault noted no damage to any of the elevations and two sections of fencing that were blown down; in addition, Thibault observed light tree scraping to the main front slope and the left and right gable extension on the left front slope. *Id.* at 4-5.

Later that same day, Thibault prepared the State Farm estimate. *Id.* The estimate included allowances to spot paint and seal those areas in the interior noted above as well as replacement of each of the four slopes on the exterior. Doc. 33-2 at 239.  Thibault also allowed for removal and replacement of 11.64 roofing squares, along with other roofing items; for a partial roof repair using the roofing measurements estimated by Thibault. *Id.* Thibault advised Plaintiff, via telephone and letter, that the loss would not exceed the policy's hurricane deductible, and that as a result State

---

5. The distinction does not ultimately affect the outcome of the case as the validity of underlying coverage is not in dispute.

[3] All parties agree that Plaintiff gave her husband authority to discuss the claim with State Farm.

Farm was unable to make a payment on the claim. *Id.* at 13, 77.

On April 19, 2021, Plaintiff hired Tommy Tompkins at ATA Loss Consulting, LLC ("ATA")  to conduct a secondary estimate of the property; the inspection was done on May 4, 2021. Doc. 39-2 at 25. The ATA estimate totaled $223,722.29 in damages to Plaintiff's property with a value of $212,716.73 after depreciation. *Id.* at 62-63. In response to the ATA estimate, State Farm requested a reinspection with State Farm Claim Specialist Eric McGill ("McGill"), Mr. Davis, and a representative of ATA present to take place on July 1, 2021. Doc. 39 at 6.

Upon reinspection, as to the exterior, State Farm found no additional damage to the fencing, no additional wind damage, no tree removal was required, and agreed with the scope of roof damage indicated in the original State Farm estimate. *Id.* On the interior, the reinspection noted the following storm-related damage:

> light separation on crown molding in the entry/foyer; light separation on crown molding; window stool and casing need caulking in the office; peeling paint along the arch of the wall and ceiling in the living room; fireplace mantle had small crack in caulking in the living room; "2x2" water stain and light separation on crown molding in the kitchen; light separation on crown molding in the dining room; light separation on crown molding in both hallways; small crack on ceiling, minor separation on crown molding, window caulking and caulking on window stool in the master bedroom; light separation on crown molding in master bathroom; light separation on crown molding in the master bathroom toilet closet; large water stain; light separation of crown molding in the second-floor bathroom; no ADPL in bedroom 1; light separation on crown molding in bedroom 2; light separation on crown molding in bedroom 3; no ADPL in bedroom 4; small damage to drywall on the wall in game room; and window caulking and caulking on window stool in the game room.

*Id.* (citing SF 0027-0026). McGill also noted that there was no personal property being claimed. *Id.*

Based upon the reinspection, McGill revised the State Farm estimate to include the repairs of note to reconcile the ATA estimate with the initial State Farm estimate. Doc. 39-2 at 83-125. The revised estimate totaled $22,155.31 with Plaintiff being issued a check for $7,205.25, the

amount of the repair estimate less the hurricane deductible and depreciation. *Id.; Id.* at 9. In addition, State Farm informed Plaintiff that an additional $5,272.12 was available in replacement cost benefits for any repairs completed within two years of the date of loss upon notification to State Farm withing thirty days of completion. *Id.* 63-64.

Plaintiff hired licensed professional engineer Eduard Baidu ("Baidu") of CeBB Engineering & Testing, Co to provide an expert assessment of the damages and determine their cause of origin. Doc. 36-1 at 1. Baidu inspected the Property on December 7, 2022, and April 5, 2023 and met with Plaintiff and her husband along with reviewing aerial images of the Property of property records. Doc. 48 at 2. Baidu's investigation identified wind borne debris impact damage, scuffs/abrasions/scratches; granule loss, contamination of sealant from debris and other foreign substances, and moss and leaf growth on the property's roof. Doc. 36-1 at 3. Baidu opined that, within a reasonable degree of engineering probability, roof and interior damages were, more likely than not, caused by wind, windborne debris and water intrusion that ultimately compromised the function and usefulness of the roof. *Id.* at 7.

As to the interior of the property, Baidu's investigation noted:

"(1) crown molding separation in the foyer and downstairs bathroom (Bathroom 1); (2) water damage to the ceiling in the family room; (3) water damage to the ceiling in the kitchen; (4) water damage to the ceiling in Bathroom 1; (5) water damage to the roof decking above an upstairs bedroom (Bedroom 2); (6) ceiling gypsum board separation in another upstairs bedroom (Bedroom 3); (7) water damage to the ceiling in the upstairs hallway; (8) ceiling gypsum board separation in the downstairs master bedroom; and (9) water damage to the ceiling in the garage."

Doc. 48 at 2. Baidu opined that, within a reasonable degree of engineering certainty, the interior damages were caused by moisture/water intrusion through the wind and wind-borne debris created openings. Doc. 36-1. at 8.

Plaintiff also retained Dennis James, owner, and operator of Triad Restoration Services

("Triad"), as an expert on the cost of repair damages to the property. *Id* at 9; Doc. 47 at 1.  Triad's

inspector, Alex Falke, inspected the Property taking field notes and photographs on November 3,

2022. Doc. 47 at 2. James reviewed the field notes and photographs from Falke, the ATA estimate,

the July 11, 2021, the State Farm estimate, and the Baidu report. *Id.* He opined "the replacement

cost value of the hurricane damage to the Property is $87,034.89, and that the actual cash value of

the damage to the Property is $67,781.98." *Id.*

State Farm retained an engineer, Kevin Vanderbrook, P.E. of VECO Consulting, LLC as

its expert witness, who inspected the Property on February 6, 2023.  Doc. 39 at 10. Vanderbrook

opined that:

> (1) the roof of the home was not damaged by wind forces; (2) some minor
> miscellaneous interior water stains in this home may be related to wind, including
> the stain on the living room ceiling and downstairs bedroom; (3) the stain on the
> garage ceiling may be related to windblown rain; (4) these interior water stains are
> cosmetic in nature and can be spot repaired and repainted without any replacement
> of sheetrock; and, (5) there was no damage to the windows on this home which
> would necessitate replacement.

*Id.*

## B.    Procedural Background

On April 4, 2022, Plaintiff originally filed with the Circuit Court of Mobile County,

Alabama her complaint against Defendant in which she brings claims for breach of contract (Count

1) and bad faith (Count 2).  Doc. 1-2.  On September 1, 2022, Defendant filed its notice of removal

with this Court pursuant to 28 U.S.C. § 1332(a)(1).  Doc. 1.  On the same date, Defendant filed its

answer to the complaint.  Doc. 4.

On July 21, 2023, Defendant filed the instant motion for summary judgment and brief in

support.  Docs. 38, 39. Contemporaneously, Defendant filed motions to exclude the expert

testimony of Eduard Badiu and Dennis James. Docs. 36, 37. Plaintiff and Defendant timely filed

their respective responses and replies. *See* Docs. 47, 48, 49, 52, 53, 54. The motions are fully briefed and ripe for review, and the Court finds oral argument unnecessary.

## III.   STANDARD OF REVIEW

### A.   Summary Judgment

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co.*, 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).[4] At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party must support its assertion that there is no

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177,

3188, 111 L. Ed. 2d 695 (1990).  "Speculation does not create a *genuine* issue of fact."  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (emphasis in original) (citations omitted).  In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case.  *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."  FED. R. CIV. P. 56(e).

## B.    Daubert motions

The admission of expert testimony is governed by FED. R. EVID. 702, which provides that, if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," a witness "qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise."  FED. R. EVID. 702.  The U.S. Supreme Court elucidated this requirement in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, noting that district courts are gatekeepers charged with ensuring that "speculative, unreliable expert testimony does not reach the jury."  *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002).  In determining the admissibility of expert testimony under *Daubert,* the district court must consider

whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291-92 (11th Cir. 2005).  "While there is inevitably some overlap among the basic requirements — qualification, reliability, and helpfulness — they remain distinct concepts and the courts must take care not to conflate them."  *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citation omitted).

The district court's objective is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).  The proponent of the expert testimony bears the burden of demonstrating that the expert is qualified to render his testimony, the methodology by which he reached his conclusions is sufficiently reliable, and his opinions will assist the trier of fact.  *Id*.

If a witness' qualifications to render an opinion rest exclusively or primarily on experience, the witness "must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *Id*. at 1261 (internal quotations and citation omitted) (emphasis in original).  Reliability may not be premised "merely by the *ipse dixit* of an admittedly qualified expert."  *Id*.  When determining reliability, the district court may take into consideration a range of factors, including: (1) whether the expert's theory can be, and has been, tested; (2) whether the expert's theory has been subjected to peer review and publication; (3) whether the employed technique has a known error rate; and

(4) whether the methodology is generally accepted in the scientific community.  *Id.* at 1262; *McCorvey*, 298 F.3d at 1256.  These factors, however, are non-exhaustive.  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999). The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home,* 996 F.2d 266, 268 (11th Cir. 1993).

## IV.    DISCUSSION AND ANALYSIS

### A.    Daubert Motions

As the motions to exclude the expert testimony in this case may or may not impact the summary judgment determination, the Court resolves those motions first.

#### i.    Dennis James

State Farm moves to exclude the report and deposition testimony of Plaintiff's expert witness, Dennis James ("James"), as failing to satisfy the minimum Rule 702 and 703 admissibility standards under the Federal Rules of Evidence. As grounds, State Farm argues that: (1) James' opinion regarding the Hurricane Sally damage to the Property incurred is not his own but instead the opinion of his investigator (Alex Falke); (2) James did not prepare the Triad estimate himself; (3) James did not review the deposition transcript of Plaintiff or her husband; (4) Falke conducted the field inspection, took measurements, photographs, noticed observable damage, prepared a sketch of the property, and prepared the field notes that would ultimately become the Triad estimate; and (5) based on James' participation in the preparation of the Triad estimate – or rather the lack thereof – James cannot provide expert testimony by merely adopting the opinions of another, which is inadmissible hearsay. Doc. 37 at 3-4.

In response, Plaintiff argues that (1) Triad is a licensed general contracting firm in the State

of Florida, owned and operated by Dennis James, focusing on residential and commercial restoration work, general contracting, remodeling, and consulting; (2) James is personally licensed as a general contractor; and (3) James relied on his experience as a licensed general contractor, the field notes and photographs from his estimator Alex Falke's inspection of the Property on November 3, 2022, a prior estimate for the cost to repair the Property prepared by ATA Loss Consulting, photographs from ATA Loss Consulting's inspection of the Property, State Farm's repair estimate dated July 11, 2021, and an engineering report prepared by Eduard Baidu of CeBB Engineering when formulating his opinion. Doc. 47 at 2.

No dispute exists as to James' qualifications.  Further, the Court finds that a review of his qualifications and experience establishes that he is qualified.  State Farm's argument hinges on its assertion that James' opinion isn't predicated upon a reliable foundation of facts and data since he reviewed photographs and notes taken by his field inspector during his inspection of the Property to help form the basis of his opinion, instead of James going out to the property himself. This goes to methodology – the second prong of the Daubert analysis.  State Farm's argument fails as a matter of law.

The fact that an expert does not personally inspect the scene of an incident is not by itself determinative; personal inspections are not a black letter requirement. *See, e.g.*, *Woienski v. United Airlines, Inc.*, 383 F. Supp. 3d 1342, 1348 (M.D. Fla. 2019) ("an expert is permitted to form conclusions by extrapolating from existing data.") (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) ("factors which this and other courts have considered in the Daubert analysis are reliance on anecdotal evidence (as in case reports)..."); *Bryant v. BGHA, Inc.*, 9 F. Supp. 3d 1374, 1392 (M.D. Ga. 2014) (permitting opinion of expert who did not personally visit the scene of the incident and did not

inspect the hunting tree stand because he relied upon partner's measurements, photos and data); *Am. Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ("An expert witness's opinion testimony does not have to be based upon admissible evidence.").

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Here, James' testimony is directly related to the damage the Property sustained during Hurricane Sally. More specifically, James would testify as to the scope of storm damage and State Farm refutes the scope of damages the Property incurred as a result of Hurricane Sally.

As to the final prong of the Daubert analysis, clearly, James' testimony concerning the scope of damage to the Property is relevant and would assist a jury in reaching their conclusion.

Ultimately, the Court finds that the crux of State Farm's argument against James' qualifications goes to the weight of evidence, which can be addressed during cross-examination and does not merit exclusion of his testimony. As such, State Farm's motion to exclude James as an expert witness is denied.

### ii.     Eduard Badiu, PhD

Defendant argues Badiu's opinions are due to be excluded because they will not assist the trier of fact in determining the extent of damage caused to the Property by Hurricane Sally or whether the alleged damages are covered by the State Farm Insurance policy. Doc. 36 at 3. More specifically, State Farm alleges Badiu's testimony fails to meet the requirements of the helpfulness prong because he is unable to attribute the damage to the Property to Hurricane Sally as alleged in Plaintiff's Complaint. *Id.* at 4.  The motion does not challenge either Badiu's qualifications or even methodology.  Rather the sole focus is on the third prong – whether the information and testimony

will assist the trier of fact.

State Farm argues Badiu's opinion that the damage to the property was caused by wind and/or windborne debris – but not necessarily Hurricane Sally – is sufficiently imprecise and unspecific that it will not assist the trier of fact in determining the extent of damage caused to the Property by Hurricane Sally.

In response, Plaintiff asserts Badiu is licensed as a professional engineer in the State of Alabama who personally inspected the property twice. Doc. 48 at 1-2. He identified physical damage to the Property during those inspections, interviewed Plaintiff's husband, reviewed aerial images of the Property, reviewed property records, and reviewed the deposition testimony from Plaintiff and her husband in formulating his expert opinion. *Id.* at 2. Thus, Plaintiff argues Baidu's ability to distinguish between all of the reasonably potential causes of damage to the Property and render an opinion that the cause of the damage is likely wind, wind-driven debris, and water intrusion is helpful to the trier of fact because it eliminates other potential causes of the damage to the Property and "Baidu's opinion that the Property sustained wind, wind-driven debris, and water intrusion damage is simply one piece of the puzzle" in Plaintiff proving her claim. *Id.* at 6.

"The rejection of expert testimony is the exception rather than the rule." *Moore,* 995 F.3d at 850 (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments). The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). In providing causation opinions, "absolute certainty is not required. Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically." *Jones v. Otis Elevator Co.,* 861 F.2d 655, 662 (11th Cir. 1988).

Here, the Court again finds that the crux of State Farm's arguments against Baidu's qualifications go to the weight of evidence, which can be addressed during cross-examination and does not merit exclusion of his testimony. As such, State Farm's motion to exclude Baidu as an expert witness is denied.

**B.      Summary Judgment**

State Farm argues it is entitled to summary judgment because Plaintiff has not offered any admissible evidence that Hurricane Sally caused any damage to the Property nor admissible evidence of the reasonable cost of repair to Plaintiff's property as a result of Hurricane Sally.  Doc. 39 at 1. Defendant argues expert testimony is required to prove both causation and cost. *Id.* In response, Plaintiff argues she has provided extensive expert testimony on both causation and cost. Doc. 49 at 2. However, she also asserts expert testimony is not required to prove causation in an insurance coverage dispute. *Id.* Moreover, the totality of the evidence proffered, including, but not limited to, Plaintiff's proffered expert reports, State Farm's claim documents, eyewitness testimony of Plaintiff and her husband, and photographs of the property, are all sufficient to establish both the cost and causation of damages to her property.  *Id.*  Finally, Plaintiff argues that the multiple competing estimates create a genuine issue as to the insurance company's liability. *Id.* at 3.

"In this diversity action, Alabama's substantive law governs the interpretation of the [insurance contract] at issue." *Employers Mut. Cas. Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002) (citation omitted). Alabama law provides that "[i]nsurance policies are contracts, and like other contracts, they are governed by the general rules of contracts." *James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1254 (11th Cir. 2022) (quoting *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001) and internal modifications omitted).  To

prevail on a breach of contract claim under Alabama law, a party must establish: (1) the existence

of a valid contract binding the parties in the action, (2) its own performance under the contract, (3)

the [other party's] non-performance, and (4) damages. *Ex parte American Heritage Life Ins. Co.*,

46 So.3d 474, 477 (Ala. 2010) (citing *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 937 (Ala.

2001)); *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals

Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)).

However, where a party fails to comply with a condition precedent to recovery under a

contract, said party cannot sustain a breach of contract claim. More specifically, under Alabama

law, the burden is on the insured to establish coverage exists under an insurance policy." *Mallard*,

309 F.3d at 1307 (citations omitted).

> The insurer has the burden of establishing that an exclusion excludes coverage for
> a claim. *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001). Exclusions
> must be interpreted "as narrowly as possible in order to provide maximum coverage
> for the insured and must be construed most strongly against the company that drew
> the policy and issued it." *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805
> (Ala. 2012) (internal quotation marks omitted).

*James River*, 22 F.4th at 1254.

Here, State Farm argues that lay witness testimony is inadmissible to prove the cause of

the damages claimed by Plaintiff. State Farm cites to *Nix v. State Farm Fire & Cas. Co.*, 444 F.

App'x 388 (11th Cir. 2011), an appeal from a decision by the United States District Court for the

Northern District of Alabama, to support its argument. In *Nix*, the Eleventh Circuit stated:

> The district court did not err by granting summary judgment in favor of State Farm
> because the uncontroverted evidence establishes that the Nixes' claim was excluded
> from coverage. State Farm introduced testimony from its expert witness, Mark
> Voll, that the retaining wall in the basement of the Nixes' home collapsed because
> the wall was not properly designed or built and collapsed from hydrostatic pressure.
> *See Jordan v. Nat'l Accident Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir.
> 1991). Voll, an engineer, testified that the retaining wall lacked reinforcing steel,
> as required by a local building code, and could not withstand the pressure created
> by groundwater that had accumulated during a heavy rainfall. Voll also testified

that a French drain installed alongside the retaining wall failed to disperse the groundwater because the drain had been covered with clay soil instead of gravel. Although the Nixes argued that the main line water pipe burst and caused the retaining wall to collapse, they based that argument on the opinions of Terry Nix and a contractor who made temporary repairs to the wall, and those opinions were not admissible as lay testimony. Neither Nix nor the contractor witnessed the wall collapse or had personal knowledge about the construction of the Nixes' home. *See* FED. R. EVID. 701. Because the collapse of the retaining wall was attributable to causes excluded from coverage under the Nixes' insurance policy, State Farm did not breach its contract with or owe a duty to further investigate or to pay the claim filed by the Nixes.

*Nix*, 444 F. App'x at 390.

However, in *Nix*, the Eleventh Circuit did not discuss whether Alabama law requires expert testimony to prove causation, and State Farm does not cite to Alabama substantive law that states such. *See Nix*, 444 F. App'x at 390. Importantly, in *Nix,* the Eleventh Circuit based its decision to disregard the Nixes' proffered lay witness testimony to prove causation on Fed. R. Evid. 701 since the witnesses neither witnessed the damage nor had personal knowledge about the construction of the damaged area. *See id.*

Cases that were decided after *Nix* by courts that applied Alabama law have cited to that case to exclude lay witness testimony that was introduced to prove causation. The Court will discuss those cases in chronological order.

In *McPherson v. Allstate Indemnity Co.*, Civ. Act. No. 3:11cv638-WHA(wo), 2012 U.S. Dist. LEXIS 58557, 2012 WL 1448049 (M.D. Ala. Apr. 26, 2012), the cause of a fire that destroyed a dwelling was contested and was before the district court on cross-motions for summary judgment. The insurance company's expert opined the cause of the fire was incendiary. *Id.*, 2012 U.S. Dist. LEXIS 58557, at *5-6, 2012 WL 1448049, at *2-3. In response, the McPhersons submitted an affidavit from their nephew, who was the caretaker of the property at issue but did not live there, in which he recalled "several occasions where gas was inadvertently spilled on the

interior floors at the property," "gasoline was used to cleans stains and blemishes off the vinyl flooring throughout the property," and when he was notified of the fire, he drove to the property and observed lightning while he drove to, and when arrived at, the property. *Id.*, 2012 U.S. Dist. LEXIS 58557, at *7, 2012 WL 1448049, at *3. The district court concluded the McPhersons' evidence was insufficient to create a question of fact as to the cause of the fire because they were obliged to "do more than show that there is some metaphysical doubt as to material facts." *Id.*, 2012 U.S. Dist. LEXIS 58557, at *23, 2012 WL 1448049, at *8 (internal quotation marks and citation omitted).

In *Ware v. National Insurance Co.*, Civ. Act. No. 7:11-cv-4272-LSC, 2013 U.S. Dist. LEXIS 52641, 2013 WL 1680514 (N.D. Ala. 2013 Apr. 12, 2013), cited by State Farm, the cause of water damage to a home was contested and was before the district court on the insurance company's motion for summary judgment. The insurance company argued the damage was excluded from policy coverage and offered evidence, including expert testimony, that showed the damage was the result of ground water accumulation, which was not covered. *Id.*, 2013 U.S. Dist. LEXIS 52641, at *14-15, 2013 WL 1680514, at *5. The Wares submitted testimony from the original installer of their roof to support their claim that the damage was caused by a leaking roof and heavy rains, but the district court did not allow the testimony insofar as it offered expert opinion because it was not properly disclosed. *Id.*, 2013 U.S. Dist. LEXIS 52641, at *8-12, 2013 WL 1680514, at *3-5. The district court allowed portions of the installer's testimony insofar as it was admissible for a lay witness but found it had little probative value because he did not possess first-hand knowledge of the damage to the roof and water damage to the home, which was supported by the *Nix* decision. *Id.*

In *Johnson v. State Farm Fire and Casualty Co.*, Civ. Act. No. 12-00534-N, 2013 U.S.

Dist. LEXIS 123525, 2013 WL 4607548 (S.D. Ala. Aug. 29, 2013), the cause of water damage to a home was contested and was before the district court on the insurance company's motion for summary judgment.  The insurance company argued the damage was excluded from policy coverage and offered evidence, including expert testimony, that showed the damage was the result of surface water runoff, which was not covered.  *Id.*, 2013 U.S. Dist. LEXIS 123525, at *30-31, 2013 WL 4607548, at *9.  The Johnsons submitted lay witness accounts to show there was a pinhole leak in a pipe under their house that, at least in part, caused the water damage, but the district court found, while the testimony was from witnesses who either personally spotted or repaired the leak, the testimony could not be used to show the leak, in fact, caused the water damage.  *Id.* 2013 U.S. Dist. LEXIS 123525, at *32, *41-42, 2013 WL 4607548, at *9, *12.

In *Brown v. State Farm Fire and Casualty Co.*, 358 F. Supp. 3d 1265 (N.D. Ala. 2018), the cause of the failure of a concrete basement wall was at issue and before the district court on the insurance company's motion for summary judgment.  The insurance company argued the failure was excluded from policy coverage and offered expert testimony that showed the failure was the result of hydrostatic pressure.  *Id.* at 1268-69.  The Browns submitted lay witness testimony to show the failure was caused by a nearby lightning strike, but the district court only allowed the testimony insofar as it reflected their observations and first-hand knowledge of the failure, none of which saw a lightning strike cause the damage, then found "lay testimony is inadmissible to establish causation."  *Id.* at 1272-74.

However, in *Greater Hall Temple Church of God v. Southern Mutual Church Insurance Co.*, 820 F. App'x 915 (11th Cir. 2020)[, a case in which Georgia, and not Alabama, law was at issue, the decision of the district court to grant the insurance company's motion for summary judgment was before the Eleventh Circuit.  The underlying issue in the matter was what caused

damage to a church roof.  *Id.* at 916-18.  The Eleventh Circuit summarized the district court's decision:

> First, the district court held that the meaning of the term "surface water" – which Greater Hall's insurance contract specifically excludes from coverage-should be interpreted to include rainwater that collects on a roof.  Therefore, the court reasoned, "Greater Hall's claim fails because the Policy does not insure the church for damage caused by surface water, which is what Plaintiff alleges here."  Second, and separately, the court held that "[e]ven if [it] did not adopt this definition, Greater Hall's claim would still fail" because "Greater Hall was presented no admissible evidence [that] damage to the church's roof [was] caused by [Hurricane Matthew]."

*Greater Hall*, 820 F. App'x at 917-18.

The Eleventh Circuit found the district court construed Greater Hall's claims too narrowly and, when properly construed, Greater Hall's claims were covered under the insurance policy.  *Id.* at 920-21.  The Eleventh Circuit then stated, since the damage as alleged was covered, the inquiry became whether Greater Hall produced sufficient evidence to support its allegations to survive summary judgment and, since all of Greater Hall's expert witnesses had been excluded, whether expert testimony was required to prove the cause of the damage.  *Id.* at 921-22.  As to that inquiry, the Eleventh Circuit treated it as a question of state law, since the district court treated the issue as such and neither party challenged that determination on appeal, *id.* at 922 (citing *Bahamas Sales Assoc., LLC v. Byers*, 702 F.3d 1335, 1342 (11th Cir. 2012)), then determined, under Georgia law, "expert testimony is not necessarily required to prove causation in the insurance-contract context, and that-even in the face of admissible expert testimony from the defendant-the plaintiff may satisfy its burden of proof with circumstantial lay testimony."  *Id.*

Despite Greater Hall's lack of admissible expert testimony to support its claim and the fact that none of its lay witnesses saw the hurricane cause the damage, the Eleventh Circuit found Greater Hall provided enough circumstantial evidence, based on lay witness testimony, for a jury

to conclude the hurricane caused the damage. *Id.* Such circumstantial evidence included testimony from the church's pastor about the church's condition after the hurricane, testimony from the constructor of the church's roof about the condition of the roof from before and after the hurricane, and testimony from another lay witness about the condition of the church a few days after the hurricane. *Id.*

      After the Eleventh Circuit found Greater Hall presented sufficient circumstantial evidence to survive summary judgment, it then addressed Southern Mutual's argument that Greater Hall was required to prove causation through expert testimony:

> Southern Mutual, like the district court, relies heavily on our unpublished decision in *Nix v. State Farm Fire & Casualty Company*, which it claims stands for the proposition that "proving causation requires expert testimony." Br. Of Appellee at 26 (citing *Nix*, 444 F. App'x at 390). There are a couple of problems with Southern Mutual's reliance on *Nix*. First, *Nix* dealt with Alabama-not Georgia-law. *Nix*, 444 F. App'x at 389. Second, we don't think that *Nix* should be read as *requiring* expert testimony to prove causation. Although the *Nix* Court granted summary judgment for the defendant in that case-and held that the defendant's expert provided "uncontroverted evidence" showing that the basement wall at issue collapsed because it was not properly designed-it suggested that the plaintiff could have survived summary judgment through lay witness testimony, so long as the witness "had personal knowledge about the construction of the [plaintiff's] home." *Id.* at 390. Applying that principle here, Greater Hall survives summary judgment through the lay-witness testimony of Alfred Teston, who personally constructed the church roof at issue.

*Greater Hall*, 820 F. App'x at 923 (emphasis in original).

      When comparing *Nix* and *Greater Hall*, the Court finds that *Greater Hall* is more applicable to the situation and hand. In *Nix*, the Eleventh Circuit did not discuss whether Alabama law requires expert testimony to prove causation, unlike its discussion of Georgia law in *Greater Hall*. State Farm does not cite to Alabama substantive law that provides otherwise. Importantly, in *Nix,* the Eleventh Circuit based its decision to disregard the Nixes' proffered lay witness testimony to prove causation on Fed. R. Evid. 701 since the witnesses neither witnessed the

damage nor had personal knowledge about the construction of the damaged area. *See id.*
Therefore, *Nix* is distinguishable.

Here, Plaintiff was present in the Property immediately before, during, and after the
hurricane. Both she and her husband provided testimony about the damage that they observed to
the property. Further, Plaintiff made her claim with State Farm less than 48 hours after the
hurricane and, in the initial claim call, as documented by State Farm, Plaintiff reported wind
damage to the roof and fence, along with water spots on the ceilings and tree debris damage. In
the initial report notes of State Farm, the field inspector noted that the roof was a 19-year-old roof
in non-repairable condition, that the wind blew down two separate sections of the fencings, and
water staining in the kitchen and bathroom. In addition, State Farm tacitly acknowledged that
Plaintiff's damages, or at least a portion thereof, were caused by Hurricane Sally as the hurricane
deductible was applied in both the original and amended State Farm estimates. Viewing the
evidence in light most favorable to the plaintiff, the Court finds Plaintiff and her husband's
proffered lay witness testimony, along with their supporting documentation, provides sufficient
circumstantial evidence to show the hurricane caused the alleged damages to the property and from
which a jury could find in Plaintiff's favor.

As to State Farm's argument that Plaintiff has not presented expert testimony to show the
cost of repairs and that the repair costs were reasonable, the Court finds expert testimony is not
required and Plaintiff has submitted sufficient evidence that a jury could award damages that are
reasonably certain.

> Damages for breach of contract ""'"should return the injured party to the position
> he would have been in had the contract been fully performed."'"" *Parsons v. Aaron*,
> 849 So. 2d 932, 949 (Ala. 2002) (quoting other cases). Although they need not be
> proved to a mathematical certainty, "damages [for breach of contract] may not be
> awarded where they are remote or speculative. A jury must have some reasonable
> basis for the amount of its award." *Parsons*, 849 So. 2d at 949. *See also Ricwil*,

*Inc. v. S.L. Pappas & Co.*, 599 So. 2d 1126, 1132 (Ala. 1992).

> "It is true that damages may be awarded only where they are reasonably certain. Damages may not be based upon speculation. *Industrial Chemical & Fiberglass Corp. v. Chandler*, 547 So. 2d 812 (Ala. 1988); *see also Alabama Power service Commission*, 267 Ala. 474, 103 So. 2d 14 (1958). . . . [The plaintiff] 'must produce evidence tending to show the extent of damages as a matter of just and reasonable inference.' C. Gamble, Alabama Law of Damages § 7-1 (2d ed. 1988), as cited in *Industrial Chemical, supra*, at 820. The rule that one cannot recover uncertain damages relates to the nature of the damages, and not to their extent. If the damage or loss or harm suffered is certain, the fact that the extent is uncertain does not prevent a recovery. *Story Parchment CO. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S. Ct. 248, 75 L. Ed. 544 (1931); *see also Shook Vertagreen Credit Union*, 460 So. 2d 1343 (Ala. Civ. App. 1984)."

> *Jamison, Money, Farmer & Co. v. Standeffer*, 678 So. 2d 1061, 1067 (Ala. 1996). *See also Birmingham News Co. v. Horn*, 901 So. 2d 27, 65 (Ala. 2004) (damages for lost profits based upon tort claim are recoverable if proved with reasonable certainty).

*Systrends, Inc. v. Group 8760, LLC*, 959 So. 2d 1052, 1075-76 (Ala. 2006) (alterations in original).

In the present case, even if the Court had excluded both of plaintiff's proffered experts, State Farm took into consideration Plaintiff's estimate prepared by her contractor, ATA Loss Consulting, and documented his inspection of each area of concern depicted in the ATA estimate in calculating its supplemental estimate on Plaintiff's claim. The ATA estimate clearly established both the causation and cost of Plaintiff's damages. The two disparate estimates alone establish that a genuine dispute of fact exists as to the extent of Defendant's liability for the residence. The Court cannot resolve those discrepancies here on summary judgment. Further, as previously noted, the Court does not exclude the Plaintiff's experts. Therefore, when considering them, the facts certainly are in further dispute.

Viewing the evidence in a light most favorable to the Plaintiff, genuine disputes of material fact for jury resolution exist regarding the scope of the damage to the Property, and the cost to

repair those damages. Accordingly, State Farm Fire and Casualty Company's Motion for Summary Judgment is denied as to Count One Breach of Contract.

As to Count Two Bad Faith, Plaintiff explicitly states that she "does not object to State Farm's motion for summary judgment as to Plaintiff's bad faith claim (Count II)." Doc. 49 at 3. Therefore, Plaintiff has effectively conceded it and the Court need not analyze it further. Therefore, summary judgment is granted as to Count Two, Bad Faith.

## V.  CONCLUSION

Based on the foregoing discussion and analysis, it is **ORDERED** that State Farm Fire and Casualty Company's *Motion to Exclude Expert Testimony of Eduard Badiu, PhD, P.E.* (Doc. 36) and *Motion to Exclude Expert Testimony of Dennis James* (Doc. 37) are **DENIED** and *State Farm Fire and Casualty Company's Motion for Summary Judgment* (Doc. 38) is **GRANTED in part** and **DENIED in part**. The motion for summary judgment is denied as to breach of contract and granted as to bad faith. Therefore, the case will proceed to trial on the remaining claim (Count One breach of contract).

**DONE** and **ORDERED** this 22nd day of January 2024.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE